**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on December 18, 2015, which may be different from its entry on the record.**

**IT IS SO ORDERED.**

**Dated: December 18, 2015**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 15-11057 |
| | ) | |
| DARLENE M. & VICTOR J. | ) | Chapter 13 |
| CAPRETTA, | ) | |
| | ) | Judge Arthur I. Harris |
| Debtors. | | |

## MEMORANDUM OF OPINION

This case is currently before the Court on confirmation of the debtors'

amended Chapter 13 plan and the objection of creditor Wells Fargo. If confirmed,

the amended plan would bifurcate Wells Fargo's mortgage on the debtors'

principal residence under Bankruptcy Code § 1322(b)(2) based on language in the

mortgage that pledges escrow funds as additional security. For the reasons that

follow, the Court finds that the mortgage falls within the anti-modification

protection of § 1322(b)(2). Accordingly, the Court denies confirmation of the

debtors' amended Chapter 13 plan, without prejudice to filing another plan.

## JURISDICTION

The Court has jurisdiction over this proceeding under 28 U.S.C. § 1334 and General Order 2012-7 entered by the United States District Court for the Northern District of Ohio. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## PROCEDURAL HISTORY

The debtors filed for Chapter 13 relief on March 3, 2015, and filed a Chapter 13 plan on March 13, 2015 (Docket No. 17). Wells Fargo objected to confirmation of the plan on May 14, 2015 (Docket No. 20). The debtors responded to Wells Fargo's objection on June 8, 2015 (Docket No. 24). The debtors filed a Motion to Modify Plan and an Amended Chapter 13 Plan on June 23, 2015 (Docket Nos. 28, 29). Wells Fargo objected to the confirmation of the amended plan on July 14, 2015 (Docket No. 33). On August 13, 2015, the Court held a hearing on the debtors' amended plan and Wells Fargo's objection and issued a briefing scheduling order (Docket No. 35). The parties filed fact stipulations on September 2, 2015 (Docket No. 37). Before the Court are the debtors' Brief in Opposition to the Objection of Wells Fargo Bank and in Support of Confirmation of Plan (Docket No. 38), Wells Fargo's Reply to Debtors' Brief (Docket No. 39), and the debtors' Reply (Docket No. 40).

2

## FACTUAL HISTORY

The debtors and Wells Fargo submitted the following stipulations:

1. On March 3, 2015, Debtors filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Bankruptcy Code.

2. Debtors stated that they own real property located at 4203 Kenmore Avenue, Parma, Ohio 44134 (the "Property" [or "Kenmore Property"]) on their petition.

3. This Property is identified as a single tax parcel ID: 444-18-009.

4. On December 20, 1993, Debtors obtained a loan from Assured Mortgage Corporation in the amount of $76,800.00.

5. The loan was evidenced by a Note dated December 20, 1993 (the "Note").

6. Debtors also signed a Mortgage in favor of Assured Mortgage Corporation ("Assured") dated December 20, 1993 (the "Mortgage").

7. The Mortgage was filed with the Cuyahoga County Recorder on December 22, 1993 in Volume 93-14186, Pages 39-44.

8. The Mortgage was transferred as follows:  From Assured Mortgage Corporation to Chemical Bank, N.A. on December 20, 1993.  From Chemical Bank, N.A. to G.E. Capital Mortgage Services, Inc. on

3

March 1, 1995. From G.E. Capital Mortgage Services, Inc. to Wells Fargo

Bank, N.A. on November 1, 2005.

9. The loan was modified on August 16, 2010 with a new principal balance

of $85,642.02 to be paid beginning October 1, 2010 at 7.25% interest with

monthly principal and interest payments of $836.51 until the maturity date

of January 1, 2024.

10. The escrow account associated with the Note and Mortgage has been,

periodically, funded by the Debtors since the inception of this debt.

Docket No. 37.

In addition to the parties' stipulations, the Court makes the following

additional findings based on the record in this case.

The mortgage contains a provision ("Funds for Taxes and Insurance")

establishing an escrow account that the debtors are obligated to fund monthly

(Docket No. 37, Ex. B). Pursuant to the mortgage, the funds in the escrow account

are used to pay: (1) annual taxes; (2) annual leasehold payments or ground rents

on the property, if any; (3) annual hazard or property insurance premiums; (4) any

annual flood insurance premiums; (5) any annual mortgage insurance premiums;

and (6) any sums due to Lender in lieu of mortgage insurance premiums

(Docket No. 37-1, Ex. B, Page 4). According to the proof of claim filed by Wells

4

Fargo, the debtors' escrow account is only used to pay property taxes and hazard insurance. Claim No. 8-1 at 38-40. The mortgage specifies that the escrow funds may not exceed the maximum amount a lender may require under the federal Real Estate Settlement Procedures Act of 1974 (RESPA). The escrow account provision of the mortgage contains the following language:

> "The Funds are pledged as additional security for all sums secured by this Security Instrument."

(Docket No. 37-1, Ex. B, Page 4).

On their Voluntary Petition, the debtors list the Kenmore property as their principal residence (Docket No. 1). The debtors' initial Chapter 13 plan, filed March 13, 2015, included special provisions in paragraph 11, as follows:

> Pursuant to 11 U.S.C. § 1322(b)(2), the mortgage is being modified. Wells Fargo Bank, N.A.'s mortgage is secured by the escrow funds in addition to the real property. *See, Daniel E. Stevens, Jr. et. al. v. Suntrust Mortgage, Inc.* U.S. Bankruptcy Court, Northern District, Case No. 14-41709, Adv. No. 14-4059, Judge Kay Woods (Feb. 5, 2015).

The debtors' most recent Chapter 13 plan (Docket No. 29) increased the amount of Wells Fargo's secured claim to $94,900.00, the value of the Kenmore property according to the Cuyahoga County fiscal office. Additionally, the amended plan proposes that the debtors will reimburse Wells Fargo $8,091.00 for escrow advances. The special provisions in the amended plan are identical to those in the

5

debtors' initial plan. The amended plan does not appear to provide for the ongoing payment of postpetition property taxes and property insurance, which the debtors estimate on their Schedule J at $222 per month and $91 per month, respectively.

According to the proof of claim filed by Wells Fargo, as of the petition date, the debtors owe Wells Fargo $125,237.97, including a prepetition arrearage of $58,852.41. (Claim No. 8-1). Thus, the debtors' amended plan would bifurcate Wells Fargo's claim into a secured claim of $94,900, representing the current value of the Kenmore property, and a general unsecured claim of approximately $30,000. The new secured portion of $94,900 would be paid in full within five years, with interest at the new, lower rate of 5.25 percent, in monthly payments of $1,864.00. The unsecured portion of approximately $30,000 would be paid a pro rata share of $10,000 or 35 percent, whichever is greater (Docket No. 29).

WELLS FARGO'S OBJECTION TO CONFIRMATION & REPLY BRIEF

Wells Fargo objects to its treatment in Paragraph 11 of the amended plan, wherein the debtors propose to bifurcate the mortgage and reduce Wells Fargo's secured claim down to the current value of the real property securing the claim. Wells Fargo asserts that its claim falls within the anti-modification protection of § 1322(b)(2), notwithstanding language in the mortgage pledging the escrow

6

funds as additional security. First, Wells Fargo states that there was an escrow shortage when the debtors filed their petition, and therefore, the property is not secured by additional collateral. Additionally, Wells Fargo asserts that even if the escrow account contained funds at the time of filing, the Sixth Circuit's decision in *Allied Credit Corp. v. Davis* (*In re Davis*), 989 F.2d 208 (6th Cir. 1993), dictates that escrow accounts are inextricably entwined with the real property and serve the purpose of protecting the mortgage holder's security interest. For these reasons, Wells Fargo believes the *Davis* case requires the conclusion that the mortgage cannot be modified under 11 U.S.C. § 1322(b)(2).

## THE DEBTORS' BRIEF IN OPPOSITION TO WELLS FARGO'S OBJECTION TO CONFIRMATION & REPLY IN OPPOSITION TO THE OBJECTION OF WELLS FARGO

In support of their attempt to modify Wells Fargo's secured claim, the debtors rely primarily on a recent decision by the Honorable Kay Woods, which holds that escrow funds are not real property under Ohio law, and therefore, if a mortgagee takes an interest in escrow funds as additional security, the mortgage falls outside the anti-modification protection of 11 U.S.C. § 1322(b)(2). *See Daniel E. Stevens, Jr. & Mara J. Stevens v. Suntrust Mortgage, Inc.* (*In re Stevens*), Case No. 14-41709, Adv. No. 14-4059 (Bankr. N.D. Ohio Feb. 5, 2015).

7

## THE ANTI-MODIFICATION PROVISION OF § 1322(b)(2)

Section 1322 of the Bankruptcy Code provides in pertinent part:

(b) Subject to subsections (a) and (c) of this section, the plan may—

\* \* \*

    (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . .

As Judge Lundin notes in his comprehensive and well-respected treatise on Chapter 13, in 2005, Congress "reached for more protection for claims secured by real property that is a Chapter 13 debtor's principal residence." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 454.1 at ¶ 3, Sec. Rev. July 13, 2007, www.Ch13online.com (hereinafter "Lundin"). " 'Reached for' is descriptive because it is anything but clear whether any new protection was realized." *Id*.

In Section 306 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), entitled "Giving Secured Creditors Fair Treatment in Chapter 13," Congress added two new definitions to § 101 of the Bankruptcy Code:

    (13A) The term "debtor's principal residence"—
        (A) means a residential structure *if used as the principal residence*

8

*by the debtor*, including incidental property, without regard to whether that structure is attached to real property; and

(B) includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer *if used as the principal residence by the debtor.*

* * *

(27B) The term "incidental property" means, with respect to a debtor's principal residence—

(A) property commonly conveyed with a principal residence in the area where the real property is located;

(B) all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and

(C) all replacements or additions.

Pub. L. 109-8, 109th Cong. § 306 (2005), 119 Stat. 23 (italicized portions were added as part of the Bankruptcy Technical Corrections Act of 2010, Pub. L. 111-327, 124 Stat. 3557).

## DISCUSSION

*Two Guideposts from the Sixth Circuit: Davis and Reinhardt*

While there is an abundance of case law interpreting the scope of the anti-modification protection in § 1322(b)(2) and the new definitions added by § 306 of BAPCPA in 2005, of particular importance are two published decisions by the Sixth Circuit: *Allied Credit Corp. v. Davis* (*In re Davis*), 989 F.2d 208 (6th Cir. 1993), and *In re Reinhardt*, 563 F.3d 558 (6th Cir. 2009).

9

*In re Davis*

In *Davis*, the Sixth Circuit held that language in a deed of trust which required fire insurance and covered "rents, royalties, profits, and fixtures" did not remove the security interest from the anti-modification protection of § 1322(b)(2). As to the requirement of hazard insurance, the Sixth Circuit concluded: "Accordingly, we hold that a requirement of hazard insurance with the creditor designated as beneficiary will not ordinarily take a creditor outside the protection of § 1322(b)(2)." *Davis*, 489 F.2d at 212. The Sixth Circuit reserved for another day the issue of whether other types of insurance might serve as "additional security" for purposes of § 1322(b)(2). *Id.* In finding that hazard insurance does not remove a creditor's claim from the protection of § 1322(b)(2), the *Davis* court relied heavily on a decision of the Fifth Circuit, *Matter of Washington*, 967 F.2d 173 (5th Cir. 1992):

> Although *Washington* does not speak directly to hazard insurance, we find its analysis of optional credit life and disability insurance even more compelling when applied to hazard insurance. Like credit life and disability insurance, hazard insurance is merely a contingent interest–an interest that is irrelevant until the occurrence of some triggering event and not an additional security interest for purposes of § 1322(b)(2).

*Davis*, 989 F.2d at 211 (discussing *Washington*, 967 F.2d at 174-75). The *Davis* court also quoted with approval language from *In re Braylock*, 120 B.R. 61

10

(Bankr. N.D. Miss. 1990), which the Fifth Circuit also quoted with approval in

*Washington*:

> Practically every deed of trust which encumbers improved real property contains a provision requiring the borrower to acquire and maintain insurance coverage to protect against fire and other casualty losses. To hold that this type [of] insurance coverage constitutes an additional security interest would completely eviscerate the protective exception for residential lenders found in Section 1322(b)(2). Congress would not have enacted a meaningless statute, knowing that practically all of the lenders for whom the protective exception was intended, would be eliminated from the protection solely because they routinely require fire and casualty insurance. As such, the logical, if not inescapable conclusion is that a fire and casualty insurance policy, naming the lender as a beneficiary, additional insured, or loss payee, does not constitute an additional security interest.

*Davis*, 989 F.2d at 211 (quoting *Braylock*, 120 B.R. at 63).

The *Davis* court next addressed the deed of trust's conveyance of an interest

in "the Hereditaments and Appurtenances, rents, royalties, profits, and fixtures

thereto appertaining," stating:

> We hold that the referenced phrase refers to benefits which are merely incidental to an interest in real property, and find that Allied Credit's interest in these incidental benefits does not constitute additional security for purposes of § 1322(b)(2).

989 F.2d at 212. The *Davis* court described this language as conveying only

"incidental interests," "which are inextricably bound to the real property itself as

part of the possessory bundle of rights." *Id*. at 212-13.

11

*In re Reinhardt*

In *Reinhardt*, the Sixth Circuit addressed whether § 1322(b)(2) precludes the modification of a security interest when the creditor also holds a security interest in the debtor's mobile home, which constitutes personal property under Ohio law. The *Reinhardt* court began by analyzing the text of § 1322(b)(2):

> According to the grammatical structure of that clause, "that is the debtor's principal residence" modifies "real property." Therefore, if the claim does not pertain to "real property," it does not matter whether the claim is on a "debtor's principal residence." The provision plainly contains two requirements: that the property be real property and that it be the debtor's principal residence.

563 F.3d at 562. The *Reinhardt* court then determined that there was no need to examine BAPCPA's legislative history to determine Congress' intent in adding the definition of "debtor's principal residence" because § 1322(b)(2) clearly contains a separate requirement that the "debtor's principal residence" must be real property. 563 F.3d at 562-63. "[N]o matter how broad the definition of 'debtor's principal residence,' it still must also be 'real property' for the anti-modification provision to apply." 563 F.3d at 563. Thus, the argument that Congress expanded the definition of "debtor's principal residence" to include "a mobile or manufactured home" was beside the point. *Id*. The *Reinhardt* court then looked to Ohio law to determine whether a home constitutes real property. And "[b]ecause

12

Ohio state law is clear that Debtors' mobile home is not real property, the bankruptcy court correctly held that it could modify [the creditor's] secured claim on the mobile home under § 1322(b)(2)."  563 F.3d at 564.

*Harmonizing Davis and Reinhardt*

As a court within the Sixth Circuit, this Court is duty-bound to follow the holdings of published Sixth Circuit decisions, including both *Davis* and *Reinhardt*. The panel in the later holding, *Reinhardt*, did not cite or discuss the earlier holding in *Davis*; however, this Court will attempt to harmonize the holdings and reasoning of the two decisions.  Indeed, this Court is bound to follow the twin guideposts of *Davis* and *Reinhardt* even if they seem to point in different directions.  Moreover, to the extent that *Reinhardt* found "no need to examine BAPCPA's legislative history to determine Congress' intent in adding the definition of "debtor's principal residence," 563 F.3d at 562-63, this Court will also decline to side with courts in other jurisdictions that have used the BAPCPA provisions to clarify the scope of the anti-modification clause in § 1322(b)(2). Unfortunately, this Court's ultimate conclusion is at odds with that of a colleague in the same district.  Certainly, no one should be faulted for concluding that *Reinhardt* dictates a different outcome.   And while the question is a close one, in attempting to harmonize and give respect to both *Davis* and *Reinhardt*, the

13

undersigned judge feels compelled to conclude that a pledge of escrow funds as additional security does not take Wells Fargo's mortgage outside the anti-modification protection of § 1322(b)(2).

In harmonizing these two holdings, two principals emerge:

1. Additional security that is neither real property, incidental to real property, nor intended to protect real property takes a mortgage outside the anti-modification protection of § 1322(b)(2); and

2. An interpretation of § 1322(b)(2) that takes most mortgages outside the anti-modification protection of § 1322(b)(2) would eviscerate the protective exception for residential lenders and be contrary to the Congressional intent in enacting § 1322(b)(2) in 1978.

The question for this Court then is what about the existing mortgage which includes an escrow provision with the following language: "The Funds are pledged as additional security for all sums secured by this Security Instrument." (Docket No. 37-1, Ex. B, Page 4).

Escrow funds secure a claim by requiring the borrower to set aside additional money to make sure property taxes are current and do not erode the mortgage holder's lien position, and to make sure hazard and other insurance is in place to protect the collateral. Escrow funds are not real property under Ohio law.

14

*See Stevens*, slip. op. at *17-22. Nor are they included in the bundle of rights associated with real property like the "rents, royalties, profits, and fixtures" included in the mortgage at issue in *Davis*. On the other hand, escrow funds are intended to protect real property, much in the way that the hazard insurance in *Davis* was intended to protect the real property securing the creditor's mortgage. Hazard insurance, after all, is neither real property nor is it included in the bundle of rights normally associated with real property. Rather, it is designed to protect against damage to the real property. Thus, even though hazard insurance is neither real property nor included in the bundle of rights associated with real property, the *Davis* court has held that such a requirement does not take a creditor outside the protection of § 1322(b)(2).

Like hazard insurance, a requirement that funds be placed in escrow for payment of property taxes and insurance is intended to protect the real property. Escrow funds help to ensure that money is available to pay property taxes, which, if unpaid, would diminish the mortgage holder's lien position since unpaid property taxes constitute a lien senior to the mortgage. Similarly, escrow funds ensure that hazard insurance or credit insurance is paid up to protect the mortgage holder in the event of fire or the death or disability of the homeowner.

In addition, like hazard insurance, the requirement that funds be placed in

15

escrow for payment of property taxes and insurance is widespread.  Thus, if such a requirement were to take all such mortgages outside the anti-modification protection of § 1322(b)(2), it would eviscerate the protective exception for residential lenders and be contrary to the Congressional intent in enacting § 1322(b)(2) in 1978.  In two Supreme Court cases interpreting provisions of the Bankruptcy Code after the Sixth Circuit's decision in *Reinhardt*, only Justice Scalia declined to consider Congressional intent and the implications of a contrary interpretation.  *See Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 78 (2011) (contrary interpretation of "applicable" in section 707(b)(2)(A)(ii)(I) "would frustrate BAPCPA's core purpose of ensuring that debtors devote their full disposable income to repaying creditors"); *Hamilton v. Lanning*, 560 U.S. 505, 520 (2010) (mechanical approach to "projected disposable income" in § 1325(b) "would produce senseless results that we do not think Congress intended").

*See also King v. Burwell*, 135 S. Ct. 2480 (2015):

> A fair reading of legislation demands a fair understanding of the legislative plan.
>
> Congress passed the Affordable Care Act to improve health insurance markets, not to destroy them.  If at all possible, we must interpret the Act in a way that is consistent with the former, and avoids the latter. Section 36B can fairly be read consistent with what we see as Congress's plan, and that is the reading we adopt.

16

135 S. Ct. at 2496.

In the present case, the escrow provision arguably does more than just require that funds be placed in escrow for payment of property taxes and insurance. The mortgage recites that such funds "are pledged as additional security for all sums secured by this Security Instrument." Should this added language be enough to take all such mortgages outside the anti-modification protection of § 1322(b)(2)? The record is unclear how prevalent this language is in mortgages. The mortgage at issue was signed and recorded in 1993 and indicates that it is an "OHIO - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT Form 3036" dated "9/90" and amended "5/91." Similarly, the mortgage at issue in *Stevens* was signed and recorded in 2007 and indicates that it is an "FHA Ohio Security Instrument (MERS Modified) . . . 54301OH 02/02." The pertinent language in the mortgage at issue in *Stevens* states: "The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument." Docket #5, p.13 of 50, Adv. Pro. No. 14-4059. Nearly identical language was also included in a New Jersey mortgage at issue in *In re Ferandos*, 402 F.3d 147, 153 (3d Cir. 2005) ("The Funds are pledged as additional security for the sums secured by this Mortgage."). *See also In re Inglis*, 481 B.R. 480, 482 (Bankr. S.D. Ind. 2012) ("Escrow Funds are pledged as additional security for all

17

sums secured by this Security Instrument."); *In re Bradsher*, 427 B.R. 386, 391

(Bankr. M.D.N.C. 2010) ("The Escrow Funds are pledged as additional security

for all sums secured by the Security Instrument.").  To the extent that this or

similar language has been extensively used in mortgages, the reasoning of *Davis*

would presumably dictate that Congress could not have intended such mortgages

be taken outside the anti-modification protection of § 1322(b)(2).  As the

bankruptcy court indicated in *In re Rodriguez*, 218 B.R. 764 (Bankr. E.D. Pa.

1998):

> Congress placed the anti-modification clause in the Bankruptcy Code
> to protect the interests of the mortgage lending industry for the
> purpose of assuring a ready supply of capital for use in home
> mortgage loans.  *Nobelman*, 508 U.S. at 332, 113 S. Ct. at 2111-12
> (Stevens, J., concurring); *Grubbs v. Houston First American Savings
> Association*, 730 F.2d 236, 245-46 (5th Cir. 1984). This Court will
> interpret the anti-modification clause to achieve that objective.
> Accordingly, the court does not believe that section 1322(b)(2)
> should be read so narrowly that the presence of common home
> mortgage features such as security interests in escrow accounts or
> insurance proceeds results in the removal of a mortgage from
> protection of the anti-modification clause. These features are in nearly
> every mortgage and thus to hold otherwise would render section
> 1322(b)(2) meaningless and defeat Congress' objective.

218 B.R. at 775.

In fact, while the specific escrow language does not appear in any of the

published opinions, the mortgage at issue in the Supreme Court's *Nobelman*

18

decision included a security interest in "escrow funds" and "proceeds of hazard insurance." *See In re Nobelman*, 129 B.R. 98 (N.D. Tex. 1991), aff'd 968 F.2d 483 (5th Cir. 1992), aff'd 508 U.S. 324 (1993). And while the Supreme Court in *Nobelman* never addressed whether a security interest in escrow funds would have taken the Nobelmans' mortgage outside the anti-modification protection of § 1322(b)(2), it is worth noting that no one seemed to argue before the Fifth Circuit or the Supreme Court that the Nobelmans' mortgage could be modified simply because the mortgage included a pledge of escrow funds as additional security.

Although some courts seem to draw a distinction between mortgages that simply require escrow funds for property taxes and insurance and mortgages that also pledge such escrow funds "as additional security" for the underlying claim, *see*, *e.g.*, *In re Hughes*, 333 B.R. 360, 363 (Bankr. M.D.N.C. 2005), for several reasons, this Court believes that there is too fine a distinction to draw a line between mortgages that are protected from anti-modification and those that are not on this basis alone. *Cf. Bank of America v. Caulkett*, 135 S. Ct. 1995 (2015) (rejecting debtor's attempt to have Supreme Court distinguish between partially underwater liens and totally underwater liens). For example, the amount of funds that can be placed in escrow are limited by the Real Estate Settlement and Procedures Act of 1974 (RESPA), which predates the adoption of § 1322(b)(2) of

19

the Bankruptcy Code in 1978. Typically, the amount of extra funds in escrow cannot be more than two months worth of taxes and insurance. *See* 12 U.S.C. § 2609. Therefore, including language in a mortgage pledging escrow funds as additional security for the underlying claim does not add to the limited amount of money that mortgage holders can hold in escrow under RESPA. Moreover, if the homeowner is behind in payments, the amount of funds held in escrow at the time of bankruptcy may well be zero or negative. For example, the proof of claim filed by Wells Fargo in the present case indicates that, as of the petition date, the debtors were forty-eight months in arrears, although the parties have stipulated that the "escrow account associated with the Note and Mortgage has been, periodically, funded by the Debtors since the inception of this debt." (Docket No. 37 at ¶10). *Compare Hughes*, 333 B.R. at 362 (all that matters is that security was given) *with In re Brown*, 311 B.R. 282 (Bankr. M.D. Fla. 2004) (mortgage protected from anti-modification despite language pledging funds as additional security because no escrow account was ever established). *See also* Lundin at § 127.1 (discussing case law on whether additional collateral must have value).

In addition, the supposed distinction between mortgages that simply require escrow funds for property taxes and insurance and mortgages that also pledge such funds "as additional security" for the underlying claim may well be illusory. Even

20

absent an express pledge of escrow funds "as additional security," such escrow funds may constitute collateral (*i.e.*, security) that the mortgage holder could apply to the underlying claim or use as an offset, if in fact there were excess funds after paying all required property taxes and insurance. *See also* Lundin at § 124.1 (suggesting that a mortgage should fall outside the anti-modification protection of § 1322(b)(2) if mortgage holder has a right of setoff in deposits of the debtor). As Judge Lundin notes: "A creditor with a right of setoff under § 553 is the holder of a secured claim 'to the extent of the amount subject to setoff.' " *Id*.

Under Ohio's version of UCC § 9-305, Ohio Rev. Code § 1309.313, a security interest in money can be perfected by possession. *See French v. Imaginary Investments* (*In re Phillips-Camper*), 359 B.R. 659, 660-61 (Bankr. N.D. Ohio 2007). Thus, with any mortgage that requires the debtor to give the creditor or a third party additional money to be held for the payment of property taxes or insurance, the creditor may have a perfected security interest in the escrow funds, or at least a right of setoff, even absent an express pledge of the escrow funds as additional security. *See* Ohio Rev. Code § 1303.313 (UCC § 9-305); *In re Copeland*, 531 F.2d 1195 (3d Cir. 1976) (perfection by possession requirement of Delaware version of UCC § 9-305 was met when third-party bailee held stock that debtor had pledged to creditor); *In re Cedar Rapids Meats, Inc.*,

121 B.R. 562 (N.D. Iowa 1990) (under Iowa version of UCC § 9-305, insurance commissioner held perfected security interest in escrow funds held by escrow agent serving both parties); *see also Drown v. Perfect* (*In re Giaimo*), 440 B.R. 761, 768 (B.A.P. 6th Cir. 2010) (noting how easily a secured party can create an enforceable security interest), aff'd (Sixth Circuit Jan. 31, 2013) (unpub.) No. 11-3038; *cf. Ferandos*, 402 F.3d at 156 ("Under New Jersey law the [debtor] retains no interest in such funds once escrowed.").  Because a debtor retains no interest under New Jersey law in funds advanced for taxes and interest, the *Ferandos* court concluded that "any grant of a security interest was meaningless and conveyed essentially no interest at all."  *Id*.  The *Ferandos* court then noted that not treating escrow funds as additional security comports with common sense:

> New Jersey's view of escrow funds, and our conclusion that they are not collateral, makes sense. Escrow funds are simply not akin to property whose value is applied by mortgagees in the event of default to pay down the outstanding debt. Rather, funds for taxes and insurance, paid over and placed in escrow, exist precisely for the purpose of paying said taxes and insurance—a cost incurred by the debtor in connection with the ownership of the real property. The debtor simply pays these costs in advance and retains no interest in the funds once placed in escrow. Given the common sense view of the funds endorsed by the New Jersey courts and our deference to state law when it comes to defining property interests, we view these escrowed funds as not constituting additional collateral.

402 F.3d at 156.

In concluding that the escrow language at issue in the current case does not take the debtors' mortgage outside the protection of § 1322(b)(2), the Court emphasizes that its analysis does not rely on the language of BAPCPA § 306, other than for what is presumably the obvious proposition that Congress did not intend to *narrow* the anti-modification protection of § 1322(b)(2) when it adopted BAPCPA in 2005. In other words, nothing in § 306 of BAPCPA affects the continued validity of the reasoning in *Davis*. And while some courts outside the Sixth Circuit have used the language of BAPCPA to infer an intent to *broaden or at least clarify* the anti-modification protection of § 1322(b)(2), *see, e.g., Akwa v. Residential Credit Solutions, Inc.* (*In re Akwa*), 530 B.R. 309, 314-15 (D. Md. 2015); *In re Inglis*, 481 B.R. at 484, this Court feels bound by *Reinhardt* not to use BAPCPA as authority for this proposition.

Nor does this Court's analysis depend on whether the anti-modification protection of § 1322(b)(2) is good policy. Whether § 1322(b)(2) is good policy is a question for Congress and the President, not the courts. *Cf. United States v. Noland*, 517 U.S. 535, 542-43 (1996) ( "Bankruptcy courts may not take it upon themselves to make [a] categorical determination" at the same level at which Congress operated when it established the hierarchy of claims in the first place). The court merely notes that Congress presumably did not intend to use BAPCPA

23

to make it *easier* for debtors to modify home mortgages. Indeed, even in response

to the Great Recession, Congress failed to pass legislation in 2009 that would have

temporarily eased the anti-modification protection of § 1322(b)(2).

*See* H.R. 1106, 111th Congress (March 9, 2009) ("An Act to prevent mortgage

foreclosures and enhance mortgage credit availability"); "Senate Refuses to Let

Judges Fix Mortgages in Bankruptcy," N.Y. Times, April 30, 2009, p. B3.

*Additional Case Law*

To the extent that *Davis* and *Reinhardt* do not dictate a particular

application of § 1322(b)(2) to the escrow provisions at issue in this case, this

Court is aided by a large, albeit often conflicting, body of case law. *See* Lundin

at §§ 119.1, 124.1, 125.1, 126.2, and 454.1 (collecting and discussing case law).

In *Ferandos*, the Third Circuit addressed whether a mortgage that pledged

escrow funds "as additional security for the sums secured by this Mortgage" fell

within the anti-modification protection of § 1322(b)(2). 402 F.3d at 153.

Although Third Circuit precedent suggested, at least in dicta, that escrow accounts

must be treated like personalty, the *Ferandos* court held that under New Jersey law

the debtor retains no ownership interest in the escrowed funds. Thus, "any grant

of a security interest was meaningless and conveyed essentially no interest at all."

*Id*. at 156. While the *Ferandos* court found "salutory" the body of case law,

including *Davis*, that looked to the nature of the additional collateral and the intent of Congress, the *Ferandos* court considered itself constrained by prior Third Circuit precedent to "read section 1322(b)(2) to mean what its language literally states: that claim will be subject to modification unless *only* the real property stands as security." *Id.* at 154.

In *In re Kreitzer*, 489 B.R. 698, 704-06 (Bankr. S.D. Ohio 2013), the bankruptcy court held that a mortgage that included an assignment of miscellaneous proceeds "paid by any third party . . . for . . . misrepresentations of, or omissions as to, the value and/or condition of the Property" did not take the mortgage outside the anti-modification protection of section 1322(b)(2). Following the Sixth Circuit's reasoning in *Davis,* but without citing or distinguishing *Reinhardt*, the bankruptcy court concluded that it would be illogical to distinguish between real property value lost by storm or fire (and protected by hazard insurance) and real property value lost by someone's misrepresentation (and protected by an assignment of proceeds from a chose in action). *Id.* at 705. "Like the requirement to provide hazard insurance, to hold that this requirement assigning interests in claims for misrepresentation as to the value or condition of the real property constitutes an additional security interest would erode the safe harbor for residential lenders provided by § 1322(b)(2)." *Id.*

25

*In re Stevens*

As noted earlier, the Honorable Kay Woods addressed the same issue in a well-written and reasoned decision, *Daniel E. Stevens, Jr. & Mara J. Stevens v. Suntrust Mortgage, Inc.* (*In re Stevens*), Case No. 14-41709, Adv. No. 14-4059 (Bankr. N.D. Ohio Feb. 5, 2015). In *Stevens*, the Chapter 13 debtors filed an adversary proceeding seeking to bifurcate a mortgage secured by their principal residence. The debtors asserted that the loan fell outside the anti-modification protection of § 1322(b)(2) for two reasons: (1) the mortgage also covered an empty lot adjacent to the debtors' principal residence; and (2) the loan was secured by personal property of the debtors, in that the mortgage pledged the escrow funds as additional security. The secured creditor moved to dismiss the adversary complaint for failure to state a claim, arguing that pledge of escrow funds was incidental property that did not take the mortgage outside the anti-modification protection of § 1322(b)(2), citing *Davis*, *Kreitzer*, and the definitions of "debtor's principal residence" and "incidental property" added by Section 306 of BAPCPA. The secured creditor did not address the debtors' other argument regarding the additional security posed by the adjacent empty lot. Judge Woods determined that because the escrow funds were personal property and not real property under Ohio law, based upon *Reinhardt*, the anti-modification protection of § 1322(b)(2) did

26

not apply.  Accordingly, Judge Woods denied the secured creditor's motion to dismiss.

While I am reluctant to disagree with a colleague and create an intra-district split of authority –  particularly in the face of such a well-written and reasoned decision – this case appears to be the exception, and I respectfully part company with my colleague.  My disagreement is based on the need to harmonize the two binding Sixth Circuit precedents of *Davis* and *Reinhardt*.  Indeed, to the extent that Judge Woods felt compelled to follow the language in *Reinhardt* requiring that any additional security be in *real property* as defined by applicable state law, I cannot fault my colleague.  And were it not for the equally binding *Davis* decision, which the *Reinhardt* court never cited or attempted to distinguish, I would agree with Judge Woods that *Reinhardt* supports the conclusion that a pledge of escrow funds takes a mortgage outside the anti-modification protection of § 1322(b)(2).

As noted earlier, however, the hazard insurance included in the mortgage at issue in *Davis* was not real property.  And while Judge Woods distinguishes hazard insurance as merely, in the words of *Davis*, "a contingent interest," and not additional security, the undersigned judge does not understand *Davis* as making "contingency" the key distinguishing feature that prevents certain personal property from constituting "additional security" for purposes of § 1322(b)(2).

27

Consider the following examples.  A debtor pledges as additional security:

- potential offspring from the debtor's herd of cattle located on a separate farm;

- any proceeds from a potential lawsuit for patent infringement or employment discrimination;

- a third mortgage on separate business property for which, at the time the mortgage was granted, there was no equity beyond the first and second mortgage; or

- stock options in which, at the time the options were pledged, the purchase price option exceeded the price of the stock, *i.e.*, the stock option was then "out of the money."

In each of these examples, the contingent interest has no relationship to the debtor's principal residence, and, presumably, nothing in *Davis* would prevent such additional security from potentially taking a mortgage outside the anti-modification protection of § 1322(b)(2).

Rather, the undersigned judge believes that a better reading of *Davis* is that § 1322(b)(2) excludes from the definition of additional security incidental personal property like hazard insurance intended to protect the real property that is the subject of the creditor's secured claim.  *See Davis*, 989 F.2d at 212 (noting that courts "have essentially characterized hazard insurance as an essential protection of the underlying collateral and not as *additional* collateral").  Similarly, *Davis* stands for the proposition that an interpretation of § 1322(b)(2) that takes most

28

mortgages outside the anti-modification protection of § 1322(b)(2) would eviscerate the protective exception for residential lenders and be contrary to the Congressional intent in creating § 1322(b)(2). *Id*. at 211. Thus, to include mandatory hazard insurance as additional security "would defeat the purpose of § 1322(b)(2), which is to protect creditors." *Id.*

Although escrow funds are not included in the bundle of rights associated with real property, they are intended to protect real property, much in the way that the hazard insurance in *Davis* was intended to protect the real property securing the creditor's mortgage. As noted earlier, escrow funds help to ensure that money is available to pay property taxes, which, if unpaid, would diminish the mortgage holder's lien position since unpaid property taxes constitute a lien senior to the mortgage. Similarly, escrow funds ensure that hazard insurance or credit insurance is paid up to protect the mortgage holder in the event of fire or the death or disability of the homeowner. And while the *Davis* court left open the question of whether credit insurance would take a mortgage outside the anti-modification protection of § 1322(b)(2), the reasoning underlying *Davis* would extend to credit insurance as well. For example, the Fifth Circuit decision upon which *Davis* relied actually involved credit insurance and not hazard insurance. Similarly, to the extent that the requirement of credit insurance in mortgages is also widespread,

29

one would not expect Congress to remove all such mortgages from the anti-modification protection of § 1322(b)(2). *See Davis*, 989 F.2d at 211 (quoting *Braylock*, 120 B.R. at 63). *Accord In re Surber*, 211 B.R. 17 (Bankr. N.D. Ohio 1997) (extending reasoning of *Davis* to requirement of credit insurance). In addition, in the present case the debtors' escrow account was not used to pay for credit insurance, just property taxes and hazard insurance. Thus, this Court need not decide whether a pledge of escrow funds that actually includes funds for credit insurance would take the mortgage outside the anti-modification protection of § 1322(b)(2).

Furthermore, like hazard insurance, the requirement that funds be placed in escrow for payment of property taxes and insurance is widespread. Thus, if such a requirement were to take all such mortgages outside the anti-modification protection of § 1322(b)(2), it would eviscerate the protective exception for residential lenders and be contrary to the Congressional intent in creating § 1322(b)(2). *See Davis*, 989 F.2d at 211. Moreover, the additional language pledging escrow funds as "additional security" adds no funds to the escrow accounts, which are governed by RESPA and cannot be more than two months worth of taxes and insurance. This is truly incidental property tied to the real property, *i.e.*, keeping the lien position from deteriorating from unpaid taxes and

30

ensuring that hazard or other insurance does not lapse.

*Summary*

In summary, notwithstanding the express language in the mortgage pledging escrow funds as additional security, the Court finds that the mortgage in this case falls within the anti-modification protection of § 1322(b)(2). The Court reaches this decision for a number of reasons, including:

- *Davis*'s holding that a requirement of hazard insurance, which is not real property, does not take a mortgage outside the anti-modification protection of § 1322(b)(2);

- *Davis*'s language that Congress would never have intended to take most mortgages outside the anti-modification protection of § 1322(b)(2), coupled with the widespread practice of mortgages requiring escrow funds, much the same as many mortgages require hazard insurance;

- The difficulty in distinguishing between mortgages that simply require escrow funds for property taxes and insurance and mortgages that also pledge such funds "as additional security" for the underlying claim;

- The fact that, even absent an express pledge of escrow funds "as additional security," such escrow funds may well constitute collateral (*i.e.*, security) that the mortgage holder could apply to the underlying claim or use as an offset, if in fact there were excess funds after paying all required property taxes and insurance;

- The fact that escrow funds, like hazard insurance, are tied to the protection of the real property, even though they are not included in the bundle of rights that constitute the real property;

- The fact that a pledge of escrow funds does not add to the limited amount of money that a mortgage holder can hold in escrow under RESPA, which

31

predates the adoption of § 1322(b)(2) in 1978; and

- The fact that, as of the petition date, the amount of the debtors' funds held in escrow was likely zero or negative.

## FURTHER PROCEEDINGS

In denying confirmation of the debtors' Chapter 13 plan, but with leave to file an amended plan, the Court is aware that its ruling is not a final appealable order. *See Bullard v. Blue Hills Bank*, 135 S. Ct. 1686 (2015). As the Supreme Court noted in *Bullard*, there may be other options for the debtors to obtain appellate review, such as: (1) proposing another plan and appealing its confirmation; (2) seeking an interlocutory appeal to the district court or Bankruptcy Appellate Panel (B.A.P.) under 28 U.S.C. § 158(a)(3), and further interlocutory review to the court of appeals under 28 U.S.C. § 1292(b); or (3) seeking a direct appeal to the court of appeals under 28 U.S.C. § 158(d)(2). As the Supreme Court further noted: "Sometimes, of course, a question will be important enough that it should be addressed immediately." Here, too, the issue of whether a pledge of escrow funds takes a mortgage outside the anti-modification protection of § 1322(b)(2) is "a pure question of law that has divided bankruptcy courts in [the circuit] and would make a substantial financial difference to the parties." *Id.*

17-52127-amk    Doc 42    FILED 12/18/15    ENTERED 12/18/15 11:35:33    Page 32 of 33

In light of the intra-district conflict with Judge Woods's decision in *Stevens*, this Court does not wish to create further impediments to the parties' attempt to have a higher court resolve this conflict. Accordingly, the Court will conduct a status conference on **January 7, 2016, at 1:00 P.M.** to determine how best to proceed in this Chapter 13 case. The debtor and Wells Fargo might also wish to consider a plan that permits a similar modification of Wells Fargo's claim, but is achieved through the secured creditor's *consent* under 11 U.S.C. § 1325(a)(5)(A). Such a proposal might benefit both the debtors and Wells Fargo, and would not require a determination that the pledge of escrow funds as additional security takes the existing mortgage outside the anti-modification protection of § 1322(b)(2).

## CONCLUSION

For the reasons stated in this memorandum of opinion, the Court finds that the mortgage falls within the anti-modification protection of § 1322(b)(2). Accordingly, the Court denies confirmation of the debtors' amended Chapter 13 plan, without prejudice to filing another plan.

IT IS SO ORDERED.